IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

MARTIN POWERS,

        Plaintiff,

v.                          CIVIL ACTION NO.   2:16-cv-05253

COVESTRO LLC, et al.,

        Defendants.


**MEMORANDUM OPINION & ORDER**

Pending before the court is the defendants' Motion for Summary Judgment [ECF No. 30] and the plaintiff's Motion for Summary Judgment on Liability for his Claim of FMLA Interference [ECF No. 32]. Both parties filed Responses [ECF Nos. 35, 36] and Replies [ECF Nos. 37, 38]. The Motions are now ripe for decision. For the reasons stated below, the defendants' Motion [ECF No. 30] is **GRANTED** and the plaintiff's Motion [ECF No. 32] is **DENIED**.

## I.    BACKGROUND

Covestro LLC employed the plaintiff from June 2013 until it discharged him in July 2014. *See* Notice Removal Ex. A, at ¶¶ 5, 12 [ECF No. 1-1]. On June 19, 2013, the plaintiff underwent a pre-employment physical wherein the physician determined that he was capable of working with "[n]o restrictions." *See* Defs.' Mot. Summ. J. Ex. C [ECF No. 30-4]. Nine months later, on March 13, 2014, the plaintiff

went to his family doctor because his urine contained blood. *See* Defs.' Mot. Summ. J. Ex. D [ECF No. 30-5]. The doctor diagnosed the plaintiff with kidney stones and suggested that the plaintiff treat the condition by drinking fluids. Pl.'s Mot. Summ. J. Ex. 2, at 53:15–54:6 [ECF No. 32-2] ("Pl.'s Dep."). The plaintiff stated that he told co-workers and Mr. Hively, his supervisor, about the discomfort in his kidneys and urinating blood, but that it was "nothing he was seriously concerned about." *Id.* at 62:23–63:16. The plaintiff, however, never requested time off for his kidney issues and continued to work regularly. *Id.* at 63:19–64:3.

Two months after visiting his family doctor, the plaintiff was scheduled to work the 5:00 p.m. to 5:00 a.m. shift on July 19. *Id.* at 70:14–19. The plaintiff wanted that night off so he could go to a stock car race at the Ona Speedway; however, the plaintiff had no leave time available and could not trade shifts with another employee. *Id.* at 69:3–5, 73:23–74:5. Prior to his July 19 shift, the plaintiff asked Mr. Hively for time off, and Mr. Hively denied the request. *Id.* at 73:16–20. On July 19, the plaintiff called work, said that he was not feeling well without referencing his urinary issues, and failed to show up for his assigned shift. *Id.* at 71:3–14; Pl.'s Mot. Summ. J. Ex. 5, at 26:4–7 [ECF No. 32–5]. Despite the plaintiff's assertion that he was not feeling well, he went to Ona Speedway that evening in lieu of going to work. Pl.'s Dep. at 71:15–19. Indeed, the record indicates that a stock car registered to the plaintiff placed fourth during a race at the Ona Speedway on July 19. Defs.' Mot Summ. J. Ex. E [ECF No. 30-6].

Three days after failing to show up for the July 19 shift, the plaintiff underwent a physical exam as part of his employment. Pl.'s Dep. at 54:11–16; Defs.' Mot. Summ. J. Ex. F [ECF No. 30-7]. During the physical examination, the plaintiff's urine again contained blood. Pl.'s Dep. at 54:18–20. Although the nurse conducting the physical recommended that the plaintiff consult his family physician and noted that his bloodwork was abnormal, she determined that the plaintiff was not an increased risk due to exposure to hazardous substances; that the plaintiff was not limited in his exposure to hazardous substances or the use of protective devices; and that the plaintiff had no medical conditions requiring further examination or treatment. *Id.* at 54:11–23; Defs.' Mot. Summ. J. Ex. G [ECF No. 30-8]; Pl.'s Mot. Summ. J. Ex. 3 [ECF No. 32-3].

Unhappy that the plaintiff failed to show up for work on July 19 and concerned that the plaintiff feigned illness, the defendants drafted a disciplinary memorandum on July 25. *See* Defs.' Mot. Summ. J. Ex. H [ECF No. 30-9]. The memorandum indicated that defendants intended to suspend the plaintiff for three days. *Id.* Mr. Hively planned to give the plaintiff the disciplinary memorandum at the end of the plaintiff's shift on July 27. *See* Defs.' Mot. Summ. J. Ex. I [ECF No. 30-10]. However, on July 27 before the end of the plaintiff's shift, Mr. Hively found the plaintiff off Covestro LLC's premises sleeping in a nearby building owned by another company. Defs.' Mot. Summ. J. Ex. J [ECF No. 30-11]. Mr. Hively shook the plaintiff awake and took the plaintiff to the control room. *Id.* Once there, Mr. Hively called his supervisor.

*Id.* The supervisor told Mr. Hively to immediately give the plaintiff the disciplinary memorandum and send him home. *Id.* Mr. Hively did so and told the plaintiff that the sleeping incident would be handled separately. *Id.*

During the plaintiff's suspension, on July 29, he went to his family doctor complaining of bladder pain. Defs.' Mot. Summ. J. Ex. K [ECF No. 30-12]. Based on the plaintiff's symptoms, the doctor ordered a CT scan, which the plaintiff had performed on July 30. Defs.' Mot. Summ. J. Ex. L [ECF No. 30-13].

On July 31, Covestro LLC terminated the plaintiff allegedly based on the sleeping incident. Notice Removal Ex. A, at ¶ 12. On August 11, the plaintiff saw a urologist at the behest of his family doctor. Defs.' Mot. Summ. J. Ex. O [ECF No. 30-16]. Two days later, the urologist diagnosed the plaintiff with bladder cancer. Defs.' Mot. Summ. J. Ex. P [ECF No. 30-17]. The plaintiff subsequently brought a lawsuit alleging violations of the West Virginia Human Rights Act ("WVHRA") and the Family and Medical Leave Act ("FMLA").

## II.    LEGAL STANDARD

### a.  Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the

court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict" in his or her favor. *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013); *Stone v. Liberty Mut. Ins. Co.*, 105 F.3d 188, 191 (4th Cir. 1997).

### b. Applicable Law

The Fourth Circuit has stated the principles a district court must apply in predicting uncertain state law:

> As a court sitting in diversity, we have an obligation to interpret the law in accordance with the [decisions of the state court of last resort], or where the law is unclear, as it appears that [such court] would rule. *See Liberty Mut. Ins. Co. v. Triangle Indus.*, 957 F.2d 1153, 1156 (4th

> Cir.1992) (holding that if state law is unclear federal courts must predict the decision of the state's highest court); *Brendle v. General Tire & Rubber Co.,* 505 F.2d 243, 245 (4th Cir.1974). To forecast a decision of the state's highest court we can consider, *inter alia:* canons of construction, restatements of the law, treatises, recent pronouncements of general rules or policies by the state's highest court, well considered dicta, and the state's trial court decisions. *See Liberty Mut.,* 957 F.2d at 1156.

*Wells v. Liddy*, 186 F.3d 505, 527–528 (4th Cir. 1999). The WVHRA claim is before me on supplemental jurisdiction; accordingly, I will apply the law of West Virginia to this case or predict, in the event of uncertainty, how the Supreme Court of Appeals of West Virginia would rule.

## III. DISCUSSION

The parties' Motions present two distinct issues. First, the defendants argue that they are entitled to summary judgment on the plaintiff's WVHRA disability discrimination claim. Second, both parties argue that they are entitled to summary judgment on the plaintiff's FMLA interference claim. The court will address each of these issues in turn.

### a. WVHRA Claim

The defendants argue that they are entitled to summary judgment on the WVHRA disability discrimination claim because the plaintiff failed to establish that he was a member of a protected class and there is no nexus between his disability and the adverse employment action. Defs.' Mot Summ. J. 7–12. The plaintiff counters that argument by pointing to evidence that he contends "amply support[s] a reasonable inference that the Defendants resented Mr. Powers'[s] having missed

work for his medical condition, and that they retaliated by giving a final warning and firing him." Pl.'s Resp. [ECF No. 36]. For the following reasons, I determine that the plaintiff has presented evidence sufficient to support a prima facie case but has failed to rebut the defendants' legitimate, nondiscriminatory reason for termination.

In disability discrimination cases involving disparate treatment, employees must first establish a prima facie case.

> To establish a prima facie case of disability discrimination under the WVHRA, [the] Plaintiff must show that (1) he meets the definition of "disabled" within the law's meaning; (2) he is a "qualified disabled person"; and (3) he was discharged from his job.

*Lindenmuth v. Lab. Corp. of Am.*, No. 2:15-CV-13368, 2016 WL 5109159, at *3 (S.D. W. Va. Sept. 19, 2016) (Johnston, J.) (citing *Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 177–78 (W. Va. 1997)); *see also Garvin v. World Color Printing (USA) II Corp.*, No. 3:10-CV-74, 2011 WL 1485998, at *11 (N.D. W. Va. Apr. 19, 2011) (articulating the same three-prong prima facie case for WVHRA disability discrimination claims). The WVHRA defines disability as

> (1) A mental or physical impairment which substantially limits one or more of such person's major life activities. The term "major life activities" includes functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working;
>
> (2) A record of such impairment; or
>
> (3) Being regarded as having such an impairment.

W. Va. Code § 5-11-2.

Based on the WVHRA's definition of disability, employees may show disability by showing that they are "either disabled in fact or regarded as disabled." *Ruckel v. Sears, Roebuck & Co.*, 287 F. Supp. 2d 652, 656 (S.D. W. Va. 2003) (Haden, J.). The central inquiry in a "disabled in fact" case is whether the employee's "conditions prevented or limited [the employee] from doing his job or from engaging in any other activity." *Hoops v. Elk Run Coal Co.*, 95 F. Supp. 2d 612, 618 (S.D. W. Va. 2000).

"Regarded as" disability discrimination cases focus on whether the employee "is either correctly or incorrectly regarded as having an impairment and/or substantial limitation." *Lindenmuth*, 2016 WL 5109159, at *3. The central inquiry in a "regarded as disabled" case is whether "the employer treats [the employee] 'as a person who should not be entrusted with the duties of his [or her] regular job.'" *Id.* (citing *Garvin*, 2011 WL 1485998, at *9). Because the focus of "regarded as" cases is whether the employer discriminatorily treated the employee as having a disability, the "regarded as" inquiry "relies on an objective test that focuses on the employer's behavior rather than the subjective motivation behind the behavior." *Id.* The relevant time period for both inquiries is the "time of the employment decision." *Bombard v. Fort Wayne Newsp., Inc.*, 92 F.3d 560, 563 (7th Cir. 1996).[1]

---

[1] Although *Bombard* is an Americans with Disabilities Act case, the Supreme Court of Appeals of West Virginia ("WVSCA") has used federal discrimination jurisprudence to aid its understanding of the WVHRA. *Stone v. St. Joseph's Hosp. of Parkersburg*, 538 S.E.2d 389, 400–01 (W. Va. 2000) ([W]e recognize that this Court, because of the similarity of the language in our Human Rights Act and related regulations and the federal laws and regulations that prohibit disability discrimination, has on occasion looked to decisions made under those federal laws to assist us in interpreting and applying our own law." (citation omitted)) However, the WVSCA recognizes that federal discrimination jurisprudence is not mandatory authority when interpreting the WVHRA *Id.* at 404 (noting that the WVSCA's WVHRA jurisprudence is not "mechanically tied to federal disability discrimination

If the employee can show that he or she is disabled, the plaintiff must then show that he or she is a "qualified disabled person." *Lindenmuth*, 2016 WL 5109159, at *3. To show that he or she is a "qualified disabled person," the employee must show that he or she is capable of performing the essential functions of the job with or without accommodation. *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561, 582 (W. Va. 1996); *see also* W. Va. Code § 5-11-2 (prohibiting employers from discriminating where the employee "is able and competent to perform the services required").

Finally, the employee must show that that "he has suffered an adverse employment action under circumstances from which an inference of unlawful discrimination arises" to establish a prima facie case. *Skaggs*, 479 S.E.2d at 582 n.22. If the employee "fails to establish the necessary link between [the employer's] termination decision and his status as a member of the protected class," the employee fails to present a prima facie case. *Hoops*, 95 F. Supp. 2d at 618.

When the employee establishes a prima facie case, "[t]he burden of production then shifts to the employer to come forward with a legitimate, nondiscriminatory reason for its actions." *Skaggs*, 479 S.E.2d at 582. If the employer puts forth a legitimate, nondiscriminatory reason for its actions, the burden shifts back to employee to produce evidence "to prove that the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Id.* To prove that the employer's proffered reason is pretextual, employees may offer "1)

jurisprudence").

comparative evidence; 2) statistical evidence; and 3) direct evidence of discrimination, in the form of discriminatory statements and admissions." *Charleston Town Ctr. Co., LP v. W. Va. Human Rights Comm'n*, 688 S.E.2d 915, 921 (W. Va. 2009) (citation omitted). Employees may also attack the employer's proffered reason by showing that "the reason articulated by the defendant for the action taken against the plaintiff is not credible." *Id.* If either party fails to meet its burden of production, its case fails as a matter of law. *See Skaggs*, 479 S.E.2d at 581–82.

i.     **Prima Facie Case**

I determine that the plaintiff has produced evidence sufficient—but only barely so—to establish a prima facie case. First, the plaintiff has produced evidence sufficient to show that the defendants regarded him as disabled.[2] Three pieces of evidence to show that the defendants regarded the plaintiff as disabled. The plaintiff relies on two pieces of evidence that show the defendants were aware of the plaintiff's symptoms. First, the plaintiff directs me to a portion of the disciplinary memorandum that states

> On July 19, 2014, you called into your immediate supervisor's office and reported that you were unable to come to work because you were "sick." While your reported illness is not at question, the fact that you participated in and records indicate your fourth place finish in a

_____

[2] The plaintiff has not, however, produced evidence sufficient to show that he was "disabled in fact" at the time he was terminated. Indeed, the plaintiff indicated that, despite the fact he began urinating blood in March, his condition "was nothing [he] was seriously worried about." Pl.'s Dep. 62:23–63:5. Furthermore, the plaintiff indicated that he "continued to come to work and do [his] work" while he was urinating blood. *Id.* at 64:2–4. Therefore, the plaintiff failed to produce evidence that his condition kept him from engaging in work or any other major life activity. Accordingly, the plaintiff failed to show that he was disabled in fact.

> competitive race at Ona Raceway on the same day and
> date, cast doubt on the credibility of your stated health.

Defs.' Mot Summ. J. Ex. H.[3] The plaintiff also relies on the fact that he told Mr.

Hively that he had kidney pain and was urinating blood before his termination.

Taken alone, these pieces of evidence do not establish a prima facie case. "[M]ere

knowledge of symptoms alone is not sufficient proof that an employer regarded an

employee as disabled. Rather, an employer regards an employee as disabled only

when it perceives or treats her as having an impairment that substantially limits a

major life activity." *Alexandru v. Ne. Utils. Serv. Co.*, No. CIV. 3:95CV461 AHN, 1996

WL 684421, at *5 (D. Conn. Oct. 10, 1996); *see also Berry v. T-Mobile USA, Inc.*, 490

F.3d 1211, 1219 (10th Cir. 2007) ("An employer's knowledge of an impairment alone

is insufficient to establish the employer regarded the employee as disabled.").[4]

Without other evidence, the adduced evidence merely shows that the defendants were

aware of the plaintiff's symptoms.

---

[3] It is unclear whether the defendants are referencing the plaintiff's passage of blood when they state, "While your reported illness is not at question." However, because I must consider the evidence in light most favorable to the non-movant, I will assume that the memorandum indicates the defendants' awareness of the plaintiff's urinary symptoms.

[4] The cited cases stand for the proposition that an employer's perception or treatment of an employee is central to the "regarded as" inquiry. This echoes the WVSCA's interpretation of the WVHRA's "regarded as" cause of action. *See Stone*, 538 S.E.2d at 406 (determining that the plaintiff "made a sufficient showing that he was regarded, perceived, or treated as having a substantially limiting impairment" where the hospital placed significant restrictions on his work duties following an injury); *St. Peter v. Ampak-Div. of Gatewood Prod., Inc.*, 484 S.E.2d 481, 486 (1997) (determining that the plaintiff's "regarded as" case should have survived summary judgment where the plaintiff's employer told the plaintiff that the employer did not "have room for half a man in [the employer's] organization"). Because both the ADA and WVHRA have been interpreted as requiring evidence of an employer's perception or treatment showing that the employer regarded the employee as disabled, I determine that the WVSCA would likely find the cited cases illuminating in regard to the WVHRA.

However, the plaintiff has produced evidence beyond mere knowledge. The plaintiff relies on the fact that the defendants terminated the plaintiff shortly after learning of his symptoms—specifically, the abnormal bloodwork and continued blood urination—to establish that the defendants regarded the plaintiff as disabled. Other courts have held that close temporal proximity between an employer's knowledge of the employee's condition and an adverse employment action is sufficient to create a dispute of material fact. *See Warshaw v. Concentra Health Servs.*, 719 F. Supp. 2d 484, 496 (E.D. Pa. 2010) ("As a general matter, a fact-finder could reasonably conclude that adverse actions suffered by an employee shortly after an employer learns of the disability are, in fact, based on the employer's belief that the employee is limited in a major life activity."); *Bullock v. Balis & Co.*, No. CIV.A. 99-748, 2000 WL 1858719, at *5 (E.D. Pa. Dec. 19, 2000) ("[T]he timing of the notice, not merely the fact of the notice itself, calls [the employer's] decision to fire [the plaintiff] into question. A reasonable trier of fact could infer from these facts that [the employer] did regard [the employee] as disabled before making the decision to fire him."); *cf. Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 705 (4th Cir. 2001) (foreclosing an argument that the temporal proximity of the employer's knowledge of the employee's condition and the employee's termination showed that the employee was regarded as disabled where the employer's discovery of the issue was temporally distant from the employee's termination). Existing jurisprudence on the matter persuades me.[5] A

---

[5] I am also convinced that existing jurisprudence is in line with the WVSCA's WVHRA jurisprudence. The WVSCA rejected any difference between direct and circumstantial evidence in disparate

reasonable juror could conclude that an employer viewed an employee as limited in performing major life activities if the employer terminated the employee shortly after learning of a medical condition. Therefore, I **FIND** that the plaintiff has produced evidence sufficient to show that the defendants regarded him as disabled.

The plaintiff has also produced evidence to sufficient to show that he is a "qualified disabled person." The plaintiff testified that he "continued to come to work and do [his] work" while he was urinating blood. Pl.'s Dep. at 64:2–4. Based on that testimony, it is clear that the plaintiff was capable of performing the essential functions of the job despite his condition. Therefore, I **FIND** that the plaintiff has produced evidence sufficient to show that he was a "qualified disabled person."

Finally, the plaintiff has produced evidence sufficient to show that the defendants terminated him because of his condition. Much like the "regarded as" prong, the fact that the defendants terminated the plaintiff shortly after learning of his condition supports an inference that the defendants terminated the plaintiff based on his perceived disability. *See, e.g.*, *E.E.O.C. v. Safelite Glass Corp.*, No. 4:10-CV-102-F, 2012 WL 3266333, at *7 (E.D.N.C. Aug. 9, 2012) (determining that "close proximity between protected activity and an adverse action has been held to satisfy the causation element of the prima facie case" in a Title VII case). The defendants argue that there is no nexus because Darnell Perry, the individual ultimately in

---

treatment cases. *Skaggs*, 479 S.E.2d at 586. The method utilized by the plaintiff is merely a means of proving his prima facie case by circumstantial evidence. Therefore, I determine that the method used by the plaintiff is sufficient to prove a prima facie case under the WVHRA.

charge of the plaintiff's termination, was unaware of the plaintiff's condition. The defendants' disciplinary memorandum, however, acknowledges the plaintiff's condition and lists Darnell Perry's name at the bottom. This is sufficient to support a showing that Darnell Perry knew of the plaintiff's condition. Therefore, I **FIND** that the plaintiff has produced evidence sufficient to show that the defendants terminated him because of his condition.

Because I must view the evidence in the light most favorable to the plaintiff, I determine that the plaintiff's scant evidence satisfies all elements of a prima facie case. Accordingly, I **FIND** that the plaintiff has presented a prima facie case of disability discrimination.

### ii.    Legitimate, Nondiscriminatory Reason and Pretext

The burden now shifts to the defendants to illustrate a legitimate, nondiscriminatory reason for terminating the plaintiff. The defendants have done so, presenting evidence that they terminated the plaintiff for failing to show up on July 19 and for sleeping on the job on July 25. Therefore, I **FIND** that the defendants have produced evidence sufficient to show a legitimate, nondiscriminatory reason for terminating the plaintiff.

Because the defendants have presented a legitimate, nondiscriminatory reason for terminating the plaintiff, the burden shifts back to the plaintiff to show that the defendants' proffered reason is pretext. To support his argument that the defendants' proffered reason was pretext, the plaintiff states,

> Your Plaintiff also submits that the Defendants' stated reason for the termination of Plaintiff—his conduct—is not the true reason, but is instead a pretext or excuse for its actual discrimination against him. As a matter of a law, sufficient facts exist such that a jury may conclude that the Defendants terminated Mr. Powers because of his disability; not based on his conduct.

Pl.'s Resp. 6. The plaintiff may not satisfy his burden by merely stating that the defendants' stated reason is pretext and vaguely hinting that sufficient evidence exists to refute the defendants' stated reason. The plaintiff must adduce *evidence* that shows "the proffered legitimate reason is a mere pretext rather than the true reason for the challenged employment action." *Skaggs*, 479 S.E.2d at 582. The plaintiff failed to do so.

The produced evidence shows the defendants knew about the plaintiff's condition and terminated the plaintiff shortly after learning about the plaintiff's condition. Although temporal proximity paired with knowledge can establish a prima facie case, courts have routinely ruled that this sort of temporal connection alone cannot establish pretext. *See, e.g.*, *Fairchild v. All Am. Check Cashing, Inc.*, 815 F.3d 959, 968 (5th Cir. 2016) (determining "temporal proximity between the plaintiff revealing her disability to her employer and her termination, by itself, was not enough to establish pretext" when affirming a verdict for the employer in a Title VII case); *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 798 (6th Cir. 2006) ("[I]t is very clear that temporal proximity alone cannot create a genuine issue of material fact as to whether Defendant's proffered reason for termination was pretext,

and that the actual motivation was disability discrimination."); *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1114 (8th Cir. 2001) (noting that the Eighth Circuit has "been hesitant to find pretext or discrimination on temporal proximity alone . . . and look for proximity in conjunction with other evidence" in an ADA case). The WVSCA has not explicitly ruled on whether temporal proximity alone can establish pretext. It has, however, ruled that the plaintiff must show that "the articulated reasons were implausible and, thus, pretextual." Syl. Pt. 5, *Barefoot v. Sundale Nursing Home*, 457 S.E.2d 152, 156 (W. Va. 1995). Based on that standard, I determine that the WVSCA would likely follow federal discrimination jurisprudence and determine that temporal proximity alone cannot establish pretext because closeness in time between an employer's discovery of the employee's condition and the employee's termination alone does not render an employer's proffered reason implausible. Although temporal proximity can support a showing of pretext,[6] the plaintiff must offer something more to effectively render an employer's legitimate, nondiscriminatory reason implausible. The plaintiff did not do so here.

Accordingly, because the plaintiff failed to adduce evidence sufficient to render the defendants' legitimate, nondiscriminatory reason implausible, I **FIND** the plaintiff has failed to adduce evidence sufficient to show that the defendants'

---

[6] This is especially true where the plaintiff utilizes temporal proximity in concert with the types of evidence commonly used to show pretext that the WVSCA identified in *Charleston Town Ctr. Co., LP v. W. Va. Human Rights Comm'n*, 688 S.E.2d 915 (W. Va. 2009).

proffered reason was pretext. Therefore, the plaintiff's case fails as a matter of law. The defendant's Motion is **GRANTED** on the WVHRA claim.

### b. FMLA Claim

Both parties contend that they are entitled to summary judgment on the FMLA interference claim. The plaintiff claims he is entitled to summary judgment because the defendants knew about his health condition and terminated him without providing him notice about his FMLA rights. The defendants argue that they are entitled to summary judgment because the plaintiff failed to provide Covestro LLC with notice of his need to take FMLA leave. For the following reasons, I determine that the plaintiff has failed to adduce sufficient evidence to support an FMLA interference claim because he failed to provide the defendants with notice sufficient to alert the defendants that the FMLA might apply.

The FMLA "entitles eligible employees to take up to twelve weeks of unpaid leave in any twelve-month period for qualifying medical or family reasons, and ensures that these employees will be restored to their same or an equivalent position upon returning to work." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 381–82 (4th Cir. 2001). 29 U.S.C. § 2615 creates the FMLA interference claim by making it unlawful to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any [FMLA] right." To succeed on an FMLA interference claim, a plaintiff must show

> she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the

> employer denied her FMLA benefits to which she was
> entitled.

*Rodriguez v. Smithfield Packing Co., Inc.*, 545 F. Supp. 2d 508, 516 (D. Md. 2008).

This case hinges on the "notice" element of the FMLA interference claim.

Employees must provide notice sufficient to alert their employer that they might require FMLA leave. *See Rhoads*, 257 F.3d at 382 ("An employee is mandated to provide notice to her employer when she requires FMLA leave."); 29 C.F.R. § 825.300(b)(1) (establishing that an employer must give notice "[w]hen an employee requests FMLA leave, or when the employer acquires knowledge that an employee's leave may be for an FMLA–qualifying reason"). Employees are entitled to FMLA leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves-- (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider. 29 U.S.C. § 2611(11).

Although the notice requirements for both foreseeable and unforeseeable FMLA leave have different temporal requirements, both require the employee to provide the employer sufficient information to determine that the FMLA may apply to the requested leave. *See* 29 C.F.R. § 825.302(c) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA–qualifying leave" where the leave is foreseeable.); 29 C.F.R. § 825.303(b) ("An

employee shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request" where the leave is unforeseeable.). Put simply, "[t]he core requirements for triggering an employer's obligations [under the FMLA] are a *serious health condition* and *adequate communication*, meaning a timely communication sufficient to put an employer on notice that the protections of the Act may apply." *Brushwood v. Wachovia Bank, N.A.*, 520 F. App'x 154, 157 (4th Cir. 2013) (quoting *Rodriguez*, 545 F. Supp. 2d at 515–516).

Here, the record contains ample evidence that the plaintiff failed to provide the defendants notice that he required FMLA leave. Asked *six times* during his deposition whether he requested medical time off, the plaintiff repeatedly replied that he never requested time off for medical treatment. Defs.' Mot. Summ. J. Ex. A, at 134:16–135:4, 148:3–11, 182:12–18, 221:20–222:3 [ECF No. 30-1]. Furthermore, the plaintiff's July 19 phone call was insufficient to put the defendants on notice that the plaintiff might require FMLA because the plaintiff merely stated that he was not feeling well. An employee does not alert his or her employer that he or she has a severe health condition by merely calling into work and vaguely stating that he or she does not feel well. *See Adams v. Wallenstein*, 814 F. Supp. 2d 516, 526 (D. Md. 2011) ("[S]imply calling in 'sick' is insufficient to put an employer on notice that FMLA leave may be needed.") (citation omitted); 29 C.F.R. § 825.303 ("Calling in 'sick'

without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act.").

The plaintiff's argument appears to be that he gave the defendants implicit notice when he notified Mr. Hively that he was urinating blood. In his Response, the plaintiff quotes *Greenwald v. Tambrands, Inc.*, 366 F. Supp. 2d 195 (D. Me. 2005) to argue "[A]n employer with some prior knowledge of an employee's medical situation may not rely on an unspecific request for FMLA leave to avoid the duty to inquire into whether the request is FMLA qualifying." Pl.'s Resp. 8 [ECF No. 36]. However, the plaintiff only once—via the July 19 phone call—requested leave in this case. Whenever the plaintiff made that request, the defendants merely had knowledge that he previously complained of kidney stones. This is insufficient to alert the employer that the employee might have a serious health condition, especially where that employee never requested time off for his condition and continued to work normally. Therefore, the defendants had no duty to inquire into the plaintiff's condition whenever he requested leave on July 19.

Moreover, even after the abnormal bloodwork, the defendants were never alerted that the plaintiff might require FMLA leave. In addition to the fact that the plaintiff failed to request leave after July 19, a number of other facts indicate that the defendants had little reason to suspect the plaintiff had a serious health condition. First, although the nurse indicated that the plaintiff should see a doctor about his bloody urine and noted abnormal bloodwork, the physician's form gave no

indication that the plaintiff had a serious health condition. *See* Defs.' Mot. Summ. J. Ex. G. Moreover, the plaintiff indicated that he "continued to come to work and do [his] work." Pl.'s Dep. at 64:2–4. Put simply, the plaintiff never did anything that would require the defendants to actively seek him out and inquire into whether he needed FMLA leave.

Furthermore, the plaintiff argues that certain dramatic changes in behavior could negate the employee's need to provide notice. *Id.* In particular, the plaintiff relies on *Byrne v. Avon Prods.*, 328 F.3d 379, 381–382 (7th Cir. 2003) (citations omitted), wherein the Seventh Circuit determined

> It is not beyond the bounds of reasonableness to treat a dramatic change in behavior as notice of a medical problem. That's clear enough if a worker collapses: an employer might suspect a stroke, or a heart attack, or insulin deficiency, or some other serious condition. It would be silly to require the unconscious worker to inform the employer verbally or in writing. Unusual behavior gives all the notice required, and no employer would be allowed to say "I fired this stricken person for shirking on company time, and by the time a physician arrived and told me why the worker was unconscious it was too late to claim fmla leave." A sudden change may supply notice even if the employee is lucid: someone who breaks an arm obviously requires leave. It is enough under the fmla if the employer knows of the employee's need for leave; the employee need not mention the statute or demand its benefits.

However, the plaintiff's behavioral change in this case is nowhere near so dramatic as that described in *Byrne*'s hypothetical dicta. Indeed, the plaintiff's behavior barely changed at all; again, according to his testimony, he "continued to come to work and do [his] work." Pl.'s Dep. at 64:2–4.

Accordingly, I **FIND** that the plaintiff has failed to produce evidence that he provided the defendants notice that he required FMLA leave. Therefore, his FMLA interference claim fails, and I **GRANT** the defendants' Motion for Summary Judgment on the FMLA interference claim.[7]

## CONCLUSION

For the above stated reasons, the court **ORDERS** that the defendants' Motion for Summary Judgment [ECF No. 30] is **GRANTED** and the plaintiff's Motion for Summary Judgment on Liability for his Claim of FMLA Interference [ECF No. 32] is **DENIED.**

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:     May 10, 2017

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

---

[7] Because I determine that the plaintiff failed to provide notice, I need not address the other FMLA issues raised by the parties.